

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-11-00065-CR

LEONARD PIERSON, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 09F0258-005

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Moseley

# OPINION

Before the mistrial was declared during the presentation of evidence in Leonard Pierson, Jr.'s, first jury trial on charges of indecency with a child and aggravated sexual assault of a child,[1] the purported victim, Bianca, had testified on direct examination regarding multiple instances in which she said Pierson sexually assaulted her or at least had sexual contact with her. Defense counsel's first question on cross-examination caused the trial court to declare a mistrial. The question was, "Did you also make an allegation that [Pierson] did these same things to his own daughter?"[2]

Pierson's second jury trial resulted in Pierson's conviction for one count of indecency with a child, enhanced by a prior felony conviction, and seven counts of aggravated sexual assault of a child and in Pierson being sentenced to life imprisonment. A central question before us is whether Pierson's second trial violated his right to be free from double jeopardy. We affirm the judgment of the trial court because—although (1) Pierson did not consent to the mistrial—(2) the evidentiary ruling was not shown to be incorrect, (3) the finding of manifest necessity

---

[1]The State alleged Pierson repeatedly molested Bianca Shaw Montana, a pseudonym, who was the daughter of his girlfriend. Bianca's mother testified that, in the early morning hours of November 27, 2008, she walked into the living room to find Pierson on the couch where Bianca was sleeping. Pierson claimed to be rocking Bianca to sleep, but Bianca's mother pulled back the covers and found that Bianca's gown was pulled up and her panties were pulled down. The sexual assault examination did not find any evidence of trauma, but DNA consistent with Pierson's epithelial cells was found on Bianca's panties. Bianca told the registered nurse who did the examination that the abuse happened every day. Pierson claimed that the allegations were false due to a bad relationship he had with Bianca's mother. Pierson does not direct us to where in the record there is evidence of a bad relationship. Bianca's mother denied having a fight that evening with Pierson and denied throwing a hammer at him. Pierson did not testify.

[2]The State immediately objected to defense counsel's question before Bianca had answered. The State also requested and was granted, over the defense's objection, a mistrial. The following week, Pierson filed a pretrial writ of habeas corpus and motion to dismiss the indictment. The trial court denied the motion, and a second jury was selected and sworn. The second jury acquitted Pierson of one count of aggravated sexual assault, but found Pierson guilty of the one count of indecency with a child and of the seven remaining counts of aggravated sexual assault.

2

was not an abuse of discretion, (4) overruling Pierson's relevancy objection was not an abuse of discretion, and (5) the evidence is legally sufficient.

*(1)     Pierson Did Not Consent to the Mistrial*

A bedrock principle of constitutional law is that a State may not put a defendant in jeopardy twice for the same offense. *Arizona v. Washington*, 434 U.S. 497, 502 (1978); *see also United States v. Newton*, 327 F.3d 17, 21 (1st Cir. 2003). "[A]s a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Washington*, 434 U.S. at 505. "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'"[3] *Id.* at 503.

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unreasonable accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.

*Id*. at 503–04; *see Ex parte Lewis*, 219 S.W.3d 335, 353 (Tex. Crim. App. 2007).

Although a retrial is absolutely prohibited when a trial ends in an acquittal or a conviction, a retrial may not be "automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Washington*, 434 U.S. at 505. Under such circumstances, a retrial over the objection of a defendant is permitted only when the prosecutor demonstrates "manifest necessity." *Id.* "Neither party has a right to have his case decided by a jury which may be tainted by bias." *Id.* at 516. A trial court's decision to

---

[3]Jeopardy attaches when the jury is sworn. *See Downum v. United States*, 372 U.S. 734 (1963); *see also Proctor v. State*, 841 S.W.2d 1, 4 (Tex. Crim. App. 1992).

declare a mistrial is reviewed for an abuse of discretion, but "the trial court's discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances." *See Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011).

Once a defendant establishes that he or she is being tried for the same offense after a mistrial, the State has the burden to prove that there was manifest necessity for the mistrial. *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002). Manifest necessity exists in three situations: (1) "when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal," (2) "when it is simply impossible to continue with trial," or (3) "when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error." *Garza*, 337 S.W.3d at 909. The State confines its arguments to the first situation—whether a fair trial was impossible. The State argues that, in simply posing the initial question it did, even without an answer to it, the defense committed an egregious error that biased the jury against the State's case, preventing a fair trial.

Different standards apply to our review if Pierson consented to the mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 670 (1982); *United States v. Dinitz*, 424 U.S. 600, 606 (1976); *Ex parte Masonheimer*, 220 S.W.3d 494 (Tex. Crim. App. 2007); *Lewis*, 219 S.W.3d at 371. If there was consent by Pierson, the State is not required to demonstrate manifest necessity. *Harrison v. State*, 767 S.W.2d 803, 806 (Tex. Crim. App. 1989). The State concedes that

4

Pierson opposed the State's request for a mistrial, and the record supports that position.[4] Pierson did not consent to the mistrial.

*(2)    The Evidentiary Ruling Was Not Shown to Be Incorrect*

Pierson argues that the trial court erred in finding the question improper and that such error requires a finding that manifest necessity did not exist. In *Washington*, the United States Supreme Court started with the assumption that the statements by defense counsel were error. *Washington*, 434 U.S. at 505. The Texas Court of Criminal Appeals, however, has permitted questions similar to the question in this case.

The record does not contain the substance of the allegedly false allegation Pierson's counsel sought to get before the jury with his question. The parties could not agree, at the first

---

[4]At oral argument before this Court, the following exchange occurred:

> Justice Carter: Do you agree that the defense does not have to make an objection to a mistrial?

> [The State]: The State will concede there is not a need for an objection. I think, in this case, the defense made it known that they did not agree with the mistrial. So I don't think that necessarily comes into issue . . . .

>         . . . .

> Justice Carter: You are saying that it is not required to object -- you're agreeing with that.

> [The State]: Correct, Your Honor.

The words "I object" are not necessary when an objection is apparent from context. *Ex parte Little*, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994) (context did not establish consent to mistrial). In determining whether a defendant has consented to the mistrial, we must consider the totality of the circumstances. *Harrison*, 767 S.W.2d at 806; *Torres v. State*, 614 S.W.2d 436, 441–42 (Tex. Crim. App. 1981). Consent, though, will not be inferred from a silent record. *Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth 1993, pet. ref'd).
    Although Pierson's attorney did not utter the phrase "I object" or "objection," the record suggests that Pierson opposed the mistrial. Pierson argued that the question was permissible and, alternatively, asked, "There's not any way an instruction would cure that?" While Pierson could have made his opposition more clear, the totality of the circumstances fails to establish Pierson consented to the mistrial. Once the trial court announced its intention to declare a mistrial, it was reasonable trial strategy to not further antagonize the trial court by challenging its decision. We will not infer consent from a silent record.

5

trial, concerning what collateral claim had been alleged. The following excerpts contain the

entirety of the details presented to the trial court before it declared a mistrial:

> [Defense Counsel 1]: The other daughter was questioned by the CAC based on the allegation.

> [The State]: That's not admissible here.

> THE COURT: Okay, what's the nature of the --?

> [Defense Counsel 2]: (Inaudible, whispering)

> [The State]: Under 412, no way.

> THE COURT: Hold on. We've got to have a hearing on the -- is the nature of the question that she has made a false outcry against somebody else or that she's made a true outcry against some other person?

> [The State]: He can't prove that it's false, but she -- in the end of her CAC interview she said that he did it to his daughter too. That's it. She didn't say what he did, how he did -- I mean, there was nothing. That was the extent of it.

> [Defense Counsel 1]: And there was an investigation in that CAC interview and -- a full investigation, and nothing came of it.

> THE COURT: Well, to introduce evidence that a child has made a false outcry, there has to be evidence that the outcry is actually false. The only reported case that's ever found that to be the case is *Thompson vs. State*, 669 S.W.2d 420, and that was a case where both the child victim and her mother admitted they were false. Absent an admission from the victim or the victim's mother that the other outcry against another person was actually false, you can't get into that they've made allegations against other people that were false.

> . . . .

> THE COURT: Mr. McFarland, let me get you to flesh out your argument a little bit more about the basis for the admissibility of this cross examination.

> [Defense Counsel 1]: Your Honor, . . . Bianca, at the end of her interview with Karrah at the CAC, . . . stated that Mr. Pierson had done the same sorts of things . . . against his own daughter, who's now sixteen years old. So she made

6

an allegation that the alleged perpetrator in her case had done the same types of things to his own biological child.

THE COURT: Okay.

[Defense Counsel 1]: Karrah subsequently interviewed, there was a forensic examination done, of Mr. Pierson's biological daughter, there at the CAC, where his biological daughter denied any allegations, denied any abuse, and did not make an outcry.

[The State]: The evidence of that is what, his word?

[Defense Counsel 1]: No, the evidence is Karrah's word when I cross examine her as to that also. And also, we plan to call his biological daughter who is now sixteen to testify that she was never abused by Mr. Pierson.

. . . .

[Defense Counsel 2]: No, sir, Judge, that wasn't the -- my understanding of it was she claimed that this happened in DeKalb in her presence when he abused his daughter, I believe is my understanding.

[The State]: No, that was her cousin.

. . . .

[The State]: She merely said -- and Karrah can come and tell you -- she merely said that either she thought or she said he even did it to his own daughter. That was the extent of the statement. There was no details, there was no --

[Defense Counsel 2]: He didn't tell her that.

[Defense Counsel 1]: She just, it just came up in the CAC interview.

THE COURT: So we don't even really know what the basis for her statement was.

[Defense Counsel 1]: We don't know the basis of the statement, just that she made the allegation and that it was subsequently investigated and went nowhere.

There is still uncertainty as to what the allegation was.[5]

---

[5]In response to our question at oral argument concerning where the record contains details of the alleged false allegation, Pierson claimed the statement could be found on the video recording of the interview by the sexual assault nurse examiner (SANE) Kathy Lach. The SANE video in this case, though, was not introduced as an exhibit. Immediately before cross-examination of Pamela Freeman, a registered nurse, at the second trial, the following interchange occurred:

THE COURT: Okay. I just wanted to -- Ms. Freeman, there's a part of that record that you were reading from –

. . . .

THE COURT: And so, before we -- before it inadvertently comes out, I wanted to have the opportunity to tell you, not in front of the jury, that the part where she apparently says -- and I don't have the statement, but apparently she says something about her stepdad had done this to his daughter or something to that effect.

[Defense Counsel 2]: It's the very last sentence of the report, where it said her --.

[The Witness]: Yeah, it does. It says something about her cousin.

THE COURT: Okay. Well, that's what we're not going to talk about, is --

We also do not have a copy of Freeman's report in the appellate record.

Though the State's original objection was based on Rule 412 of the Texas Rules of Evidence,[6] the trial court, at the first trial, referred to the question as a "collateral issue" which suggests its decision also may have been based on Texas Rule of Evidence 608. At the second trial, the trial court explicitly referenced Rule 608. Rule 608 forbids inquiry into specific instances of a witness' conduct for the purpose of attacking or impeaching that witness' credibility. TEX. R. EVID. 608(b). Exceptions to Rule 608 exist, however. The Texas Court of Criminal Appeals has recognized Rule 613, which permits the use of "extrinsic evidence to show bias or interest[,]" as an exception to Rule 608. *Billodeau v. State*, 277 S.W.3d 34, 40 (Tex. Crim. App. 2009) (child's threat to accuse different person of molestation should have been admitted in defendant's trial); *see Hammer v. State*, 296 S.W.3d 555, 566 (Tex. Crim. App. 2009) (*Billodeau* analysis also applies to Rule 412). The court has also recognized an exception when the Texas Rules of Evidence would violate the Confrontation Clause.[7]

---

[6]The State's objection was based on Rule 412. *See* TEX. R. EVID. 412. Rule 412, though, does not prohibit all impeachment of an alleged sexual assault victim, but only impeachment with reputation or specific instances of past sexual behavior by the alleged victim. By its plain language, Rule 412 only applies to "the alleged victim's past sexual behavior." TEX. R. EVID. 412. While Rule 412 is applicable to some alleged false accusations, it is not applicable when the alleged false accusation concerns the sexual behavior of someone other than the alleged victim. The alleged false accusations in this case concerned Pierson's alleged molestation of his biological daughter, not the alleged victim. Rule 412 is not applicable.

[7]The United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI, XIV. The Texas Court of Criminal Appeals has observed:

> Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules. Thus, most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence. In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) requires that the Constitution of the United States controls over the evidentiary rule.

9

Under the Texas Rules of Evidence, evidence of prior false allegations of molestation are normally not admissible to prove the propensity of the child to lie, but are normally admissible for another purpose such as motive or bias. *See id.* at 565–66; *Billodeau*, 277 S.W.3d at 40; *see also Duke v. State*, 365 S.W.3d 722, 725 (Tex. App.—Texarkana 2012, pet. ref'd). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). The trial court correctly held that the evidence of the allegedly false allegation was not admissible to prove the child's propensity to lie. The case for admitting the allegedly false accusation, though, would have been made stronger to the extent that the evidence tended to demonstrate bias.[8]

It was Pierson's burden, as the proponent of the evidence, to establish that the question would result in admissible evidence. *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008). Certainly, some causal connection or logical relationship would be required.[9] While Texas caselaw is unclear concerning what quantum of proof is required to establish that allegations of such abuse are false,[10] we need not decide that issue.

---

*Hammer*, 296 S.W.3d at 561 (footnote omitted); *see Leza v. State*, 351 S.W.3d 344, 360 n.65 (Tex. Crim. App. 2011); *cf. Crawford v. Washington*, 541 U.S. 36, 40 (2004) (rejecting "firmly rooted hearsay exception" to Confrontation Clause recognized in *Ohio v. Roberts*, 448 U.S. 56 (1980)).

[8]Evidence can still be excluded if its prejudice substantially outweighs its probative value. TEX. R. EVID. 403; *see Hammer*, 296 S.W.3d at 565–66 (trial court abused its discretion in finding unfair prejudice substantially outweighed probative value).

[9]*See Gilmore v. State*, 323 S.W.3d 250, 266 (Tex. App.—Texarkana 2010, pet. ref'd) (requiring some causal connection between pending charges and testimony for State).

[10]In general, preliminary questions of admissibility must be established by a preponderance of the evidence. *Vinson*, 252 S.W.3d at 340 n.14. The Texas courts, though, have not addressed this issue in the specific context presented

The record in this case is not sufficiently developed for us to determine whether evidence of the false allegation at issue was admissible. Although the defense announced an intent to call Pierson's biological daughter to testify to the falsity of the allegation, the record is unclear concerning what the prior false allegation was. The attorneys disagreed concerning whether Bianca claimed to have personally observed some abuse or to have heard a report of abuse. As summarized by the trial court, "So we don't even really know what the basis for her statement was."

_____

here. The trial court concluded a defendant could cross-examine a victim about a prior false allegation only if the victim had admitted the allegation was false. The trial court stated, "It's not proof by a preponderance of the evidence or proof beyond a reasonable doubt; it's that it's actually false. That's the standard." The record, though, is not clear concerning the authority on which the trial court relied. Although the victim admitted making false allegations in most cases, the cases do not discuss what quantum of proof is required. *Hammer*, 296 S.W.3d at 565; *Thomas v. State*, 669 S.W.2d 420, 423 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd). None of the cases hold that recantation is a requirement. In *Karnes v. State*, No. 05-92-02719-CR, 1994 Tex. App. LEXIS 3553 (Tex. App.—Dallas Mar. 4, 1994, pet. ref'd) (not designated for publication), the Dallas court noted that the child admitted lying in all the cases which found false accusations admissible. The Dallas court, however, did not claim that a recantation was required and cited *Hughes v. State*, 850 S.W.2d 260, 262 (Tex. App.—Fort Worth 1993, pet. ref'd), which suggested false accusations are admissible when there is "some evidence" the allegations were false. In *Garcia v. State*, 228 S.W.3d 703, 705–06 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd), the Houston court stated a dismissal of the charges and a denial of the allegations was insufficient to show falsity. However, the Fourteenth District did not hold that a recantation was required. *Id*. Our own research has discovered no Texas cases discussing the quantum of proof required. While Texas courts have stated that the allegations must be shown to be false, they have not announced a requisite quantum of evidence. *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000) ("the prior accusation was never shown to be false"); *Garcia*, 228 S.W.3d at 705–06 (self-serving denial and dismissal of charges insufficient); *Lape v. State*, 893 S.W.2d 949, 956 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (no evidence allegations were false). Missouri, Alaska, and Nevada have required a threshold determination based on proof by a preponderance of the evidence. *See, e.g.*, *Morgan v. State*, 54 P.3d 332, 339 (Alaska Ct. App. 2002) (preponderance); *State v. Long*, 140 S.W.3d 27, 32 (Mo. 2004) (preponderance); *Miller v. State*, 779 P.2d 87, 90 (Nev. 1989) (preponderance). Virginia has adopted a requirement of a "reasonable basis" to conclude the allegations were false. *Clinebell v. Commonwealth*, 235 Va. 319, 325 (Va. 1988). New Mexico and New Hampshire have adopted a standard requiring the allegations be shown to be "demonstrably false." *State v. White*, 765 A.2d 156, 159 (N.H. 2000) ("demonstrably false") *vacated by White v. Coplan*, 399 F.3d 18, 26 (1st Cir. N.H. 2005) (concluding "demonstrably false" requirement unconstitutional as applied); *State v. Johnson*, 692 P.2d 35, 43 (N.M. Ct. App. 1984) ("demonstrably false"). At least one academic commentator has suggested the appropriate standard would be a "good faith basis." *See* Jules Epstein, *True Lies: The Constitutional and Evidentiary Bases for Admitting Prior False Accusation Evidence in Sexual Assault Prosecutions*, 24 Quinnipiac L. Rev. 609, 648 (2006). Although it is not necessary for us to decide which approach should be applicable in Texas, we are dubious of the trial court's requirement of a recantation. We believe a prior allegation can be proven false without a recantation.

The record, further, does not contain any explanation of how these allegedly false allegations are evidence of bias. We note the defense previously alleged the allegations were the result of a bad relationship between Pierson and the child's mother and argued the false allegations were evidence of a motive to fabricate. An unsupported conclusory allegation of bias is insufficient. The record, however, does not contain any explanation of why the questions were admissible as evidence of bias.

Pierson has failed to meet his burden to prove that the trial court's evidentiary ruling was incorrect. The record fails to establish what the child victim alleged that was false and also fails to establish that her allegation would demonstrate bias. Pierson has failed to show the trial court abused its discretion in finding the question was improper.

*(3)     The Finding of Manifest Necessity Was Not an Abuse of Discretion*

Pierson argues that, even if the trial court's evidentiary ruling was correct, manifest necessity did not exist because an instruction to disregard would have been sufficient. According to Pierson, the trial court failed to conduct careful deliberation and weighing of alternatives.

A mistrial should be declared only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). "The burden of proof is on the State to demonstrate manifest necessity, and it is 'a heavy one.'" *Garza*, 337 S.W.3d at 916 (quoting *Washington*, 434 U.S. at 505). In the words of the Texas Court of Criminal Appeals, manifest necessity is "limited to very extraordinary and striking circumstances." *Little*, 887 S.W.2d at 65. "There must be a

12

'high degree' of necessity that the trial come to an end." *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002); *see Garza*, 337 S.W.3d at 909. The Texas Court of Criminal Appeals has instructed:

> The judge is required to consider and rule out "less drastic alternatives" before granting a mistrial. The judge must review the alternatives and choose the one which best preserves the defendant's "right to have his trial completed before a particular tribunal." The judge need not expressly state his reasons in the record as long as the basis for his ruling is adequately disclosed by the record.

*Hill*, 90 S.W.3d at 313 (citations omitted); *see Harrison v. State*, 788 S.W.2d 18, 22 (Tex. Crim. App. 1990); *see also Washington*, 434 U.S. at 517 ("The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion.").

While a trial court's decision to declare a mistrial is always entitled to deference, the amount of deference depends on the reasons for the mistrial. In *Washington*, the United States Supreme Court adopted a sliding scale of deference. One extreme of this sliding scale is jury deadlock, which is granted "great deference," while at the other extreme are "cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence." *Washington*, 434 U.S. at 510. In *Washington*, the United States Supreme Court determined that the "great deference" end of the scale is appropriate for improper comments that might cause jury bias. *Id.*; *cf. Colvin v. Sheets*, 598 F.3d 242, 246 (6th Cir. 2010) (great deference granted to mistrial based on comment referring to prior hung jury). Similarly, we owe the trial court "great deference" in this case. This is not to say that we grant absolute deference to trial courts. *Renico v. Lett*, 559

13

U.S. 766 (2010). The trial court must exercise "sound" discretion, which requires at a minimum that the court's reasons be related to the basis of the mistrial ruling and that its decision be rational and responsible. *Id.*

As Pierson argues, an instruction to disregard will usually cure error associated with an improper question. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("In most instances, an instruction to disregard the remarks will cure the error."). In such cases, though, a mistrial was declared at defendant's request, not without his or her consent.

Most Texas cases on manifest necessity do not concern evidentiary issues.[11] The facts of this case, though, are similar to the facts considered about ten years ago by Texas' Second Court of Appeals in Fort Worth. *See Ex parte Bruce*, 112 S.W.3d 635 (Tex. App.—Fort Worth 2003, pet. dism'd, untimely filed). That court found manifest necessity when the defense counsel violated a motion in limine—in suggesting the victim had admitted to making false allegations—after being told several times by the trial court that the allegation was inadmissible. *Id.* Although the differences in the language of the questions makes this case a closer call than

---

[11]*See, e.g.*, *Garza*, 337 S.W.3d 903 (when juror had heart attack, manifest necessity did not exist because defense offered to waive right to six jurors); *Hill*, 90 S.W.3d at 310 (no manifest necessity when trial court could have continued with eleven jurors); *Fierro*, 79 S.W.3d at 55 (no manifest necessity when trial court could have continued with eleven jurors); *Ex parte Brown*, 907 S.W.2d 835, 843 (Tex. Crim. App. 1995) (no manifest necessity because State's chemist, who was unavailable after first day of trial, could have testified out of order or supervisor could have testified); *Ex parte Hunter*, 256 S.W.3d 900, 902 (Tex. App.—Texarkana 2008), *pet. dism'd*, 297 S.W.3d 292 (Tex. Crim. App. 2009) (no manifest necessity because trial court failed to consider retaining juror who served on grand jury); *Ex parte Alexander*, 141 S.W.3d 798, 799 (Tex. App.—Beaumont 2004, pet. ref'd) (no manifest necessity when trial court could have granted continuance).

14

*Bruce*,[12] we, like the Fort Worth Court of Appeals, come down on the side of trial court discretion and find manifest necessity.

We conclude that the trial court exercised sound discretion in (a) granting the parties an opportunity to argue their positions on declaration of a mistrial, (b) considering alternatives to a mistrial, and (c) using its discretion to conclude the defense lacked a legitimate basis for the question.

Before declaring a mistrial, the trial court granted the parties ample opportunity to state their positions on the record as well as ample opportunity to provide authority for those positions. While the trial court may have erred in opining that a recantation was required before evidence of a false allegation was admissible, Pierson did not direct the trial court to relevant contrary authority. The record contains a lengthy discussion between the trial court and the parties, in the midst of which the trial court took a twenty-four-minute recess to research and consider the issue. The trial court's actions demonstrate deliberate consideration, rather than a precipitous ruling.

We also disagree with Pierson's argument that the trial court failed to consider an instruction to disregard. The Texas Court of Criminal Appeals and the United States Supreme Court have held that explicit consideration is not required, as long as the record supports a finding of manifest necessity. *See Washington*, 434 U.S. at 517 (rejecting requirement to "articulate on the record all the factors which informed the deliberate exercise of [trial court's]

_____

[12]As in *Bruce*, the witness did not answer the question. The question in *Bruce*, though, explicitly referenced a false allegation. *Bruce*, 112 S.W.3d at 638. Bruce's attorney, in his opening statement, alleged witnesses "will tell you that this summer [D.H.] admitted making a false --" *Id.* In this case, the language of the question sounded neutral.

15

discretion"); *Hill*, 90 S.W.3d at 313. Further, the record indicates explicit consideration. Although most of the discussion concerned the admissibility of the evidence, the trial court explicitly rejected a suggestion that an instruction to disregard would be sufficient. The trial court ruled:

> So I find that the evidence is not admissible. It is unduly prejudicial -- it's not relevant, first of all, it's unduly prejudicial. It serves only to interject issues that are collateral which would potentially confuse the jury, and I don't know how it can be cured with an instruction to the jury. So with that said, I'm going to grant the state's motion for a mistrial. Since I find that this was done because of actions of the defendant and not because of the actions of the state, then there's no jeopardy that attaches.

Thus, the trial court did consider an instruction to disregard, but concluded that an instruction to disregard would not be sufficient to purge the taint from the question. Other than the instruction to disregard, Pierson does not specify what alternatives the trial court failed to consider.

Also, the trial court did not abuse its discretion in determining that Pierson lacked a legitimate basis for the question. Although false allegations may be admissible under the appropriate circumstances, reasonable persons could disagree concerning what Pierson's intent was in this case. Earlier in the trial, Pierson had sought to introduce evidence of a bad relationship between Pierson and the victim's mother as a motive for the mother to coach the child to make false accusations. The trial court ruled this information improper. Although the question did not violate a previous evidentiary ruling prohibiting such inquiry or even violate a motion in limine, Pierson had notice that such evidence would likely be opposed by the State and disfavored by the trial court. Despite this advance notice, Pierson was unprepared to cite caselaw or other authority that the question would lead to admissible evidence. In fact, counsel

16

was not even sure what the false statement was. Under interrogation by the trial court, defense counsel's contention that the question was proper folded rather quickly.

Reasonable persons can disagree concerning whether Pierson realistically intended to get relevant evidence by posing the question or, instead, simply intended to prejudice the jury. Defendants have a right to challenge a witness' credibility by cross-examination. Pierson was given the opportunity to justify the pursuit of this question, but failed to put up more than a short-lived argument that faltered under questioning by the trial court. It was within the trial court's discretion to consider the question an improper comment by counsel intended merely to improperly create an impression of untrustworthiness.

We are required to grant the trial court's evaluation of potential juror bias "great deference." *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008). The trial court was able to observe the tone of the question and the body language of witness and defense counsel, which cannot be determined from an appellate record.

While we may not have reached the same decision, we cannot say that the trial court acted irresponsibly or irrationally. The trial court acted deliberately—not precipitously. The trial court explicitly considered and rejected the alternative of giving an instruction to disregard, and the record provides some support for the trial court's conclusion that the intent for the question was to prejudice the jury, rather than a realistic attempt to solicit admissible evidence. The trial court exercised sound discretion. Given that we must grant the trial court "great deference," we are reluctant to find an abuse of discretion under the facts of this case.

*(4)      Overruling Pierson's Relevancy Objection Was Not an Abuse of Discretion*

Pierson complains that the trial court erred in admitting the expert testimony of Kathy

Lach.  Freeman, the nurse who performed the examination of the child, was attempting to obtain

her certification, but was not certified at the time and did not ultimately obtain her certification.

At trial, Pierson objected to Lach's expert testimony and obtained a running objection, based on

"relevancy," given that Lach had "never examined this child."  Lach testified that only five to ten

percent of child abuse victims have trauma and later speculated that the abuse alleged in this case

could have occurred without causing trauma.  On appeal, Pierson argues that Lach's testimony

was not sufficiently tied to the facts of the case to be relevant and violated the "fit" requirement.

Pierson claims that the fit requirement requires the expert witness to have personally

examined the victim.  The Texas Court of Criminal Appeals has explained the fit requirement as

follows:

> Relevance is by nature a looser notion than reliability.  Whether evidence "will assist the trier of fact" and is sufficiently tied to the facts of the case is a simpler, more straight-forward matter to establish than whether the evidence is sufficiently grounded in science to be reliable.  This is not to say that the relevancy inquiry will always be satisfied.  *See Pierce*, 777 S.W.2d at 414–16 (expert could not say which scientific principles he discussed were applicable to facts in case and had no knowledge of witnesses' testimony); *Rousseau*, 855 S.W.2d at 868 (expert referred to "studies" and did not discuss whether any factors he planned to discuss would apply to facts of case); *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (expert failed to connect "generic testimony" to specific facts of case). *The expert must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony*.  Establishing this connection is not so much a matter of proof, however, as a matter of application.

*Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996) (emphasis added); *see Vela v.*

*State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Morales v. State*, 32 S.W.3d 862, 865 (Tex.

18

Crim. App. 2000). As noted by the Texas Court of Criminal Appeals in *Morales*, relevancy "lends itself to a liberal policy of admission of evidence for the jury's consideration." *Morales*, 32 S.W.3d at 865.

An expert may testify through the use of hypothetical questions. *Tillman v. State*, 354 S.W.3d 425, 429 (Tex. Crim. App. 2011). Hypothetical questions satisfy the fit requirement whenever the facts of the hypothetical match the facts of the case being tried. *Id*. The hypothetical question presented to Lach was "if a thirty year old man inserted his penis in a seven year old child, there would not necessarily be trauma?" Because the facts of this hypothetical arguably match the facts of this case, the relevancy fit requirement has been met.[13]

*(5)    The Evidence Is Legally Sufficient*

Pierson also argues that the evidence of the seven sexual assault convictions is legally insufficient because there is insufficient evidence of penetration.[14] Given the inconsistencies in the child's testimony and Doctor Erik Jacobson's testimony that the described events should have resulted in trauma, Pierson argues a rational juror could not have concluded beyond a reasonable doubt that the offenses occurred.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305

---

[13]Pierson has restricted his argument to the fit requirement. We are not expressing any opinion concerning the various other requirements for the admission of scientific expert testimony.

[14]Pierson states in his brief, "Appellant does not challenge the legal sufficiency of the sexual indecency conviction."

19

S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The child's testimony is sufficient, by itself, to establish penetration and sexual contact. The child testified as follows:

Q       Did he touch your privates -- your private?

A       Yes.

Q       Did he touch your private with his private?

A       Yes.

Q       Did he touch your private with his hands?

A       Yes.

Q       Did he touch your butt with his private?

A       Yes.

Q       Did he put his private inside your butt?

A       Yes.

Q       Did it hurt?

A       Yes.

Q       Did that happen more than once?

20

A       Yes.

. . . .

Q       Did it happen more than six times?

A       Yes.

Pierson argues this testimony is inconsistent given that the child had testified seconds earlier that Pierson did not touch her butt with any part of his body other than his hands. Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). A rational juror could have believed the child's testimony that penetration occurred.

As discussed above, Lach testified a thirty-year-old man can insert his penis in a seven-year-old child without causing trauma. Dr. Jacobson, the emergency room physician who assisted Freeman in her examination of Bianca, testified that, in his professional opinion, signs of sexual activity would have been present "if a seven year old girl was having repeated sex with a thirty year old man or a twenty-five year old man, both anally and vaginally." When asked whether he believed, "based on reasonable medical certainty," that vaginal or anal sexual activity had occurred immediately before the examination, Dr. Jacobson replied that there did not appear to be. Dr. Jacobson testified he had conducted "hundreds" of such examinations.

Although it appears the jury believed Dr. Jacobson's testimony concerning the alleged assault immediately before the examination, the jury appears to have rejected Dr. Jacobson's testimony concerning the repeated penetration. Pierson argues that, in order to find him guilty of six counts of sexual assault, the jury would have to believe Lach's testimony over Dr. Jacobson's

opinion. A rational person could believe a nurse who specializes in sexual assault examinations over an emergency room doctor. Both Lach and Dr. Jacobson testified to extensive experience.[15] While a doctor clearly receives more extensive education, Lach specialized in sexual assault examinations. Dr. Jacobson was an emergency room physician. A rational person could conclude the specialization compensated for the educational disparity.

Further, a rational person would not necessarily have to believe a nurse over a doctor. Dr. Jacobson testified he generally only reviews the nurse's examination and did not use a culpascope, "basically a microscope," in his examination of the child. The nurse who conducted the examination of the child was in the process of obtaining SANE certification, but was not certified at the time of the examination. A rational juror could have concluded that the nurse who conducted the examination may have missed trauma.

A rational person could have concluded, beyond a reasonable doubt, that penetration occurred. The evidence is legally sufficient.

For the reasons stated, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

---

[15]Dr. Jacobson has been licensed for eleven years. Lach has been a registered nurse since 1995 and a SANE since 2003.

DISSENTING OPINION

I must respectfully dissent from the majority in this case because I believe that Leonard Pierson, Jr., has been subjected to double jeopardy that is prohibited by the Fifth Amendment to the United States Constitution. This is something done with a certain reluctance because I strongly respect my colleagues and do not perceive myself as being blessed with any more percipience than they possess.

In Pierson's first trial on these charges, immediately after uttering a salutary greeting to her, the first question posed by defense counsel to the alleged victim was, "Did you also make an allegation that [Pierson] did these same things to his own daughter?" The posing of this singular question precipitated the trial court's decision to grant the State's motion for a mistrial.

As soon as this question was asked, the State objected and the trial court cleared the jury from the courtroom. During the ensuing discussion, the trial judge made what I believe was an incorrect statement, the belief in which appears to have borne substantial responsibility for its decision to declare a mistrial: "Absent an omission from the victim or the victim's mother that the outcry against another person was actually false, you can't get into that they've made allegations against other people that were false." The State complained that the question posed was "way not allowed in cross. I mean, I think that's grounds for a mistrial." The State later urged, "I'm asking for a mistrial." The trial court did not act precipitously but, rather, took time to discuss and argue the issue with the attorneys for both sides. During this discussion, the trial judge observed, "I don't see how there's any possible way that a jury could disregard this kind of

23

testimony."[16] On resuming (still outside the presence of the jury), the trial court gave Pierson another opportunity to defend his right to pursue that line of questioning. Being apparently unconvinced by the arguments given, the trial judge then announced,

> It serves only to interject issues that are collateral which would potentially confuse the jury, and I don't know how it can be cured with an instruction to the jury. So with that said, I'm going to grant the state's motion for a mistrial. Since I find that this was done because of actions of the defendant and not because of the actions of the state, then there's no jeopardy that attaches.

The majority seems to take the position that in situations wherein the State was not blameworthy in creating the situation giving rise to the grant of a mistrial (i.e., when there is no one to whom fault can be attributed or if the fault lay at the feet of the defendant), the reviewing court must give "great deference" to a trial court's decision to declare a mistrial. This is a position also argued by the State in this case, resting its argument to a great degree on *Arizona v. Washington*, 434 U.S. 497, 508 (1978). It should be noted that the United States Supreme Court in that case recognized that there should be a sliding scale or a spectrum of differing degrees of deference accorded to that decision based on the type of alleged error on the part of the trial court. *Id.* at 510. "[T]he strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Id.* at 508 (footnotes omitted). A deadlocked jury, however, is at an extreme other end of the spectrum and is entitled to "great deference." *Id.* at 510. In applying a sliding scale of increased deference, it would seem that the trial court's decision in this matter would not

---

[16]It does not appear to be picking at straws to observe here that there was no testimony or even a statement that such testimony was expected. There was merely a question.

24

be entitled to the "great deference" afforded to a sua sponte decision to declare a mistrial due to a hung jury, but, rather, to only ordinary deference.

The majority is correct in stating that the record in this case is not sufficiently developed to determine whether evidence of a false allegation at issue was admissible.[17]  However, it was the State (and not the defendant) urging the trial court to declare a mistrial in this matter, despite the fact that the case for a false allegation claim had yet to be made.  This premature urging by the State would seem to somewhat blunt the need to grant the degree of deference accorded to the trial court's decision.

The closest circumstance in Texas caselaw to the current matter appears to be *Ex parte Bruce*, 112 S.W.3d 635 (Tex. App.—Fort Worth 2003, pet. dism'd, untimely filed), wherein the defense, during opening arguments, said, "[D.H.] then will be—should be able to remember and will tell you that this summer—and Donna [H.] and Ricky [H.], her parents, will tell you that this summer [D.H.] admitted making a false—." *Id.* at 638.  The Fort Worth Court of Appeals applied the general rule, for a habeas corpus proceeding, that the applicant bears the burden to show entitlement to relief. *Id.* at 639.  This statement was made purposely and in direct violation of an order prohibiting such statements which had been entered in response to a motion in limine filed by the State.[18] *Id.*  The declaration of a mistrial was made sua sponte in that case, whereas the declaration of a mistrial in this case came only after the repeated requests of the State.  The

---

[17]In fact, the record is unclear concerning what the prior false allegation was.  The attorneys disagreed concerning whether the child claimed to have personally observed the abuse or whether she claimed her cousin had observed Pierson abusing his biological daughter.  As stated by the trial judge, "So we don't even really know what the basis for her statement was."

[18]The trial court considered this so egregious that defense counsel was held in contempt and fined; the trial court took the further extraordinary steps of recusing itself and testifying concerning the matter.

25

statement made on voir dire by defense counsel in *Bruce* was given as a statement of fact which the defendant intended to prove, not (as here) as a question posed to a witness. *Bruce* is also distinguishable from this case because it was a proceeding seeking habeas corpus relief whereas this is a direct appeal. In a habeas corpus proceeding, the applicant bears the burden to show entitlement to relief. *Id.* In contrast, in a direct appeal (such as this case), once the defendant shows that he is being tried once again for the same offense after a mistrial, it is the burden of the State to show the existence of manifest necessity in the declaration of a mistrial. *Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002).[19]

A trial court's decision to declare a mistrial is reviewed for an abuse of discretion, but "the trial court's discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances." *Garza*, 337 S.W.3d at 909. The Texas Court of Criminal Appeals has outlined three situations in which manifest necessity for the declaration of a mistrial arises: (1) "when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal," (2) "when it is simply impossible to continue with trial," or (3) "when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error." *Id.* The State confines its arguments here to the first situation—whether a fair trial was impossible. The State argues that the defense committed an egregious error that so biased the jury against the State's case that it prevented the State from receiving a fair trial. The majority is correct in finding that Pierson did

---

[19]*See Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011) (In a pretrial habeas, "[o]nce the defendant shows he is being tried for the same offense after declaration of a mistrial to which he objected, a heavy burden shifts to the State to justify the trial court's declaration of the mistrial.").

not agree with the State's request for a mistrial. Under this circumstance (i.e., since there is no evidence that Pierson agreed to the mistrial), the duty is on the State to demonstrate the existence of the manifest necessity for the grant of a mistrial. *See Harrison v. State*, 767 S.W.2d 803, 806 (Tex. Crim. App. 1989).

Because it was the State's burden to prove manifest necessity, it was also the State's burden to ensure that the record was sufficient to show the question was inadmissible and resulted in extreme prejudice. Unlike the applicant for relief in *Bruce*, Pierson does not have the burden to prove the trial court's ruling was incorrect; rather, the State has the burden to prove that the ruling of a manifest necessity for the declaration of a mistrial was correct. The insufficient record prevents the State from meeting this burden. Thus, the State has failed to establish it suffered any unfair prejudice—much less, that sufficiently extreme unfair prejudice existed to constitute manifest necessity.

The State argued to the trial court that manifest necessity is shown by merely demonstrating that some harm has resulted to a party (here, the State). That is not the yardstick by which manifest necessity is measured; it requires an extreme degree of harm so severe that a fair trial cannot occur. In the words of the Texas Court of Criminal Appeals, manifest necessity is "limited to 'very extraordinary and striking circumstances.'" *Ex parte Little*, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994).

Although the trial court is not required to explain its reasoning on the record, its reasoning must be supported by the record. The existence of alternatives is highly relevant. "When a trial judge grants a mistrial despite the availability of a less drastic alternative, there is

no manifest necessity and he abuses his discretion." *Hill*, 90 S.W.3d at 313.  As noted by the United States Supreme Court,

> in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.

*United States v. Jorn*, 400 U.S. 470, 486 (1971).

The decision by the trial court here falls very close to the line between the exercise of the "trial court's broad discretion" in finding the manifest necessity to declare a mistrial (*see Ex parte Rodriguez*, 366 S.W.3d 291, 297 (Tex. App.—Amarillo 2012, pet. ref'd)), and the obligation of the trial court to "always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Jorn*, 400 U.S. at 486.  The United States Supreme Court was correct when it uttered the often-repeated statement regarding the declaration of a mistrial that "[t]o be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . ." *United States v. Perez*, 22 U.S. 579, 580 (1824).

It does not appear that the record in this case supports a finding that alternatives less drastic than a declaration of a mistrial did not exist.  Manifest necessity requires what does not exist here:  extreme error.  Although it is true that the State may be prejudiced in some fashion because it may not have a right to appeal an acquittal,[20] such a fact does not mean that just any prejudice justifies a mistrial.  The fact remains that other alternatives were available.  Texas

---

[20]The trial court relied, at least in part, on the reasoning that the State cannot appeal if the trial results in an acquittal.

28

courts have routinely expressed confidence that an instruction to disregard will cure error associated with an improper question. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) ("In most instances, an instruction to disregard the remarks will cure the error."); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam).

Here, a jury instruction should have sufficiently saved the trial, rendering a mistrial unnecessary. That should have been done. Because it was not done, Pierson has been subjected to prohibited double jeopardy.

I respectfully dissent.


Bailey C. Moseley
Justice

Date Submitted:     November 20, 2012
Date Decided:       April 19, 2013

Publish

29